IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FRANK D. BATISTE,                          §
                                           §
            *Plaintiff*,                    §
                                           §
v.                                         §        CIVIL ACTION NO. H-08-3003
                                           §
MICHAEL ASTRUE,                            §
                                           §
            *Defendant*.                    §

**MEMORANDUM OPINION AND ORDER**

Pending before the Court in this appeal from a denial of Social Security disability benefits and supplemental security income are Plaintiff's motion for summary judgment (Docket Entry No. 14) and Defendant's cross motion for summary judgment (Docket Entry No. 12).  The Court, having considered the motions, all relevant filings, and the applicable law, **GRANTS** Defendant's cross motion for summary judgment (Docket Entry No. 12), **DENIES** Plaintiff's motion for summary judgment (Docket Entry No. 14), and **AFFIRMS** the Commissioner's decision.

## I.   CASE BACKGROUND

### A.   Procedural Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration (the "Commissioner") regarding his claims for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Title II and Title XVI, respectively, of the Social Security Act ("the Act").

Plaintiff filed an application for DBI and SSI on December 5, 2001, alleging that he was disabled in a motor vehicle accident on April 13, 2000. Tr. 39-40. At a hearing held September 13, 2006, the administrative law judge ("ALJ") heard testimony from Plaintiff, a medical expert ("ME"), and a vocational expert ("VE"). Tr. 294-335. On October 3, 2006, the ALJ issued a partially favorable decision denying Plaintiff SSI prior to December 1, 2005, but granting such benefits thereafter. Tr. 433-455. Following Plaintiff's appeal of the decision, the Appeals Counsel remanded the case to the Commissioner for further consideration.

Plaintiff filed an application for SSI on October 11, 2006, which was consolidated with the instant application. Tr. 109. A second, *de novo* hearing was held April 29, 2007, at which Plaintiff and a VE testified. Tr. 631-682. The ALJ issued his decision denying DIB and SSI on September 25, 2007. The Appeals Council denied Plaintiff's request for review. Tr. 7-10. Accordingly, the ALJ's 2007 decision became the Commissioner's final decision for purposes of this Court's review.

### B.    Factual Background

At the hearing held August 29, 2007, Plaintiff testified that he was fifty-five years of age and lived alone. Tr. 635-36. He was a high-school graduate with two years of college and two years of trade school. His last employment was a city maintenance worker for

eighteen months.  Tr. 640.  On April 13, 2000, Plaintiff was a passenger in a city maintenance truck that was struck by another vehicle.  Tr. 641, 643.  He received worker's compensation and open medical following the accident, but the worker's compensation terminated in 2001.  Tr. 642.  Because his disability limitations period expired December 31, 1999, he could only seek SSI at the time of the hearing.  Tr. 646-47.

Plaintiff testified that his back, legs, and arms were injured in the accident.  Tr. 647. As of the 2007 hearing, he was still experiencing muscle spasms down his arms, legs, and back, with intense stabbing pain.  Tr. 648.  Some mornings he was unable to walk immediately after getting out of bed.  He always needed to sit down and rest after walking. Tr. 648.  He denied having any mental conditions, but did state that he had been on antidepressants for two years, and saw a pain management therapist. Tr. 649.  He stated that he could sit for fifteen minutes, stand for twenty minutes, and lift three pounds.  Tr. 650.  He was unable to drive because of the leg spasms, and used public transportation.  Tr. 651.

He spent his days sitting, standing, resting, and trying to cope with the pain.  Tr. 653. The pain left him unable to concentrate, watch television, or read.  Tr. 654.  He had no friends, and ate meals at a neighboring deli and fast food restaurants.  Tr. 655.  He testified that he was unable to work because he could barely walk or move, could not lift over three pounds, could not concentrate, and was in "an extremely, extremely (sic) amount of pain." *Id*.  He stated he had neurological damage from a "cracked spine" with "bulging and desiccated discs that is compounded by degenerative arthritis of the cervical and lumbar."

3

*Id*. The ALJ, however, read aloud from Plaintiff's medical records dated February 24, 2006, wherein Plaintiff's physician examined his cervical, thoracic, and lumbar-sacral spines and reported finding mild degenerative disc disease and hypertrophic degenerative bony changes and well preserved disc spaces. The physician had found no acute fractures, dislocations, herniations or other significant back problems, and his final impression was "mild spondylosis." Tr. 672.

The VE testified that Plaintiff had worked as a city maintenance worker, which is a skilled occupation at the medium extertional level; as a van driver, which is a semi-skilled occupation at the medium exertional level; and as a loader, which is an unskilled occupation at the heavy exertional level. Tr. 674-75. Plaintiff testified that he had also worked as a security guard for two years in the 1990s. Tr. 675. The VE stated that security guard jobs are semi-skilled occupations at the light exertional level. Tr. 676. The ALJ asked the VE whether the following hypothetical individual would be able to do any of Plaintiff's past work:

> A younger individual, an individual closely approaching advanced age, and he is just an individual at advanced age of 55. He has 14 years of education. He has the exertional ability to occasionally lift [20] pounds and [10] pounds frequently. Sit/stand/walk ability six of eight. Push, pull and gross fine is unlimited. Now there is some minimal use of an assistive device to deal with balance and ambulation. There is no stairs, ladders, ropes, or scaffolds or running. Occasional bend, stoop, crouch, crawl, and limited twisting or balancing. There is no heights, heavy machinery, or uneven surfaces. Can get along with others, understand detailed instructions, concentrate and perform detailed tasks, and respond or adapt to workplace change in supervision.

Tr. 677.  The VE responded that the person would be able to perform Plaintiff's past work as a security guard or a gate guard.  The VE further stated that, as to transferrable skills, Plaintiff's prior work as a driver would allow work in other semi-skilled driving positions requiring a commercial license, such as commercial or private chauffeur or rental car transporter.  Tr. 678.  For commercial chauffeur, there were 400 jobs regionally and 50,000 nationally; for private chauffeurs, there were 100 jobs regionally and 20,000 nationally; for rental car drivers, there were 200 jobs regionally and 25,000 nationally.  *Id*.

At the end of the hearing, Plaintiff stated that the only reason he pursued the second hearing after remand was because he believed he had been awarded, but was not receiving, DIB.  Tr. 682.

The ALJ issued his unfavorable decision on September 25, 2007.

**C.     The ALJ's Evaluation and Findings**

The ALJ made the following findings on September 25, 2007, with attendant evaluations of the medical evidence:

(1)     Plaintiff met the insured status requirements of the Act only through December 31, 1999.  Because he was allegedly disabled as of April 13, 2000, he is not entitled to Title II benefits (DIB).  Tr. 23.

(2)     Plaintiff has not engaged in substantial gainful activity since April 13, 2000, the alleged onset date.  *Id.*

5

(3)     Plaintiff has the following severe impairments:  degenerative disc disease, somataform disorder,[1] major depressive disorder, and alcohol abuse.  *Id*.

(4)     Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listed impairment.  *Id*.

The ALJ determined that Plaintiff's mental impairments, singly or in combination, did not meet or medically equal the criteria for a Listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04, 12.07, or 12.09.   Plaintiff demonstrated only mild restrictions of activities of daily living and mild difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace.  Tr. 24.

The ALJ relied on assessments provided by the consultative medical examiner ("CE"). The CE diagnosed Plaintiff with a pain disorder associated with psychological factors and a general medical condition.   There were no marked limitations or repeated episodes of decompensation.

(5)     Plaintiff has a [residual functional capacity] ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk, and sit six hours in an eight hour day; unlimited abilities to push or pull; and unlimited gross and fine dexterity.  He requires minimal use of a cane to assist with balance and ambulation, but is unable to run or climb.

---

[1]A somataform disorder is defined as one which manifests physical symptoms for which there are no demonstrable organic findings and for which there is a strong presumption that the symptoms are linked to psychological factors.  See *Stedman's Medical Dictionary*, p. 510 (26th ed. 1995).

He can occasionally stoop, bend, crouch, and crawl, and can do limited twisting and balancing.  He cannot be exposed to unprotected heights, heavy machinery, or uneven surfaces.  He can get along with others, understand detailed instructions, concentrate on and perform detailed tasks, and respond and adapt to workplace and supervision changes.  *Id.*

The ALJ noted that Plaintiff's reasons for not working were due to his injuries from the 2000 motor vehicle accident.  Plaintiff testified to straining his neck and having an extreme amount of pain from spine, leg, and arm spasms.  He took antidepressant medications and saw a pain management specialist, but had no recent hospitalizations.  Tr. 25-26.  Plaintiff testified that he could sit for 15 minutes, stand for 20 minutes, walk for only five minutes, and lift three pounds.  During the day, Plaintiff took his medications and rested. He traveled to Louisiana by bus in 2006 with a friend, and flew from Oakland, California to Houston with no reported difficulty.  Tr. 26.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning their intensity, persistence, and limiting effects were not entirely credible.  *Id.* The ALJ noted that the objective clinical findings did not support Plaintiff's alleged subjective symptoms or functional limitations.   Plaintiff was without neurological deficit and had no serious orthopedic abnormalities or significant dysfunctions of bodily organs that would preclude a light level of exertion.

The medical records showed that, after the accident in 2000, Plaintiff was diagnosed with cervical spine strain and back muscle spasms. *Id*. X-rays taken one month after the accident revealed no significant abnormalities. An MRI of Plaintiff's spine showed extremely minimal cervical bulging, no spinal stenosis, a small osteophyte (bony) formation, and minimal thoracolumbar scoliosis. X-rays taken during an emergency room visit a short time later showed straightening of the natural cervical spine curvature, with discogenic cervical and lumbar changes. The disc spaces, however, were without abnormality. An MRI performed a year later revealed normal lumbar discs with small osteophytes, except for one desiccated (non-spongy) lumbar disc. A bulge was again noted, but all other findings were normal. Plaintiff's chiropractor reported good subjective improvement, with some tenderness and mild range of motion restriction of the cervical spine. Tr. 27.

In February of 2002, approximately two years after the accident, a neurologist diagnosed Plaintiff with cervical, thoracic, and lumbar strain, contributing to thoracic outlet syndrome and headaches. The neurologist's examination was normal, and Plaintiff had no motor, sensory, or reflex loss. *Id*. In April of 2002, Dr. Michael Han found Plaintiff to have muscle tenderness on his back with a decreased range of motion. He had full range of motion in his upper extremities, limited only by difficulty raising his arms above his head. *Id*. He had full muscle strength at 5/5, with intact reflexes and sensation. He had mildly decreased motor strength in his lower left extremities. The physician concluded that Plaintiff had mechanical lower back pain, and that he could use a cane for walking long distances, lift

8

35 pounds occasionally and 20 pounds frequently.  He had no limitations on his ability to walk, except for use of the cane as needed, and no limitations on the use of his hands.  He was unrestricted as to bending, stooping, kneeling, crouching, crawling, and squatting.  *Id.*  In August of 2004, Plaintiff was diagnosed with multi-level degenerative disc disease.  Physical therapy and lumbar epidural injections were recommended.

The CE physician examined Plaintiff in October of 2005, and noted some back tenderness.  Although Plaintiff used a cane, no abnormality of gait was observed.  He had cervical and lumbar decreased range of motion, but exhibited normal motor strength in all extremities.  His sensory examination was normal.  X-rays revealed only slight narrowing of two disc spaces and no bony abnormalities.  The CE physician diagnosed back pain, muscle spasms, and hypertension, with no evidence of motor, sensory, or reflex deficits.  Tr. 28.

A second CE physician examined Plaintiff in December of 2005, and reported lower back muscle spasms with a limited range of motion and a positive straight leg raising test.  He noted that Plaintiff had mild muscle weakness throughout the upper and lower extremities, with decreased sensation. *Id*.  Cervical x-rays revealed generalized osteoarthritis and degenerative disc disease.  Progress notes from the Veterans Administration ("VA") Hospital dated February 16, 2006, reported that Plaintiff favored his left leg and used a cane.  He had symmetrical reflexes with no muscle atrophy and no sensory or motor deficit.

The ALJ found that, although Plaintiff had degenerative disc disease, there was no consistent evidence of motor, sensory, or reflex loss.  He noted that Plaintiff's most recent

9

hospital records showed normal motor strength with no sensory or reflex loss.   He emphasized that Plaintiff had not required back surgery.   The ALJ stated that, because Plaintiff received a monetary settlement from the accident and received a $932.00 per month military pension, he lacked an incentive to return to work for reasons apart from medical factors.   The ALJ further noted that Plaintiff's professed need for inactivity during the day was unsupported by objective clinical findings indicating that he had an impairment capable of causing the degree of functional limitations alleged.   *Id*.   The ALJ opined that Plaintiff's inactivity might have been a matter of choice, lifestyle, or lack of motivation rather than the result of a medically determinable impairment.

The ALJ determined that Plaintiff's mental impairments had not caused a substantial loss in his ability to respond appropriately to supervision, coworkers, and usual work situations, as required by Social Security Ruling 85-15.   Plaintiff's mental status examination of April 20, 2002, indicated that his mood was dysphoric and apprehensive, without hallucinations or thought disturbances.   *Id*.   His recall was somewhat impaired, but recent memory was intact and his intelligence was normal.   He was diagnosed with a pain disorder associated with psychological factors, and alcohol dependence.   Tr. 29.

A state agency medical consultant reported on May 21, 2002, that Plaintiff could lift and carry 35 pounds frequently, stand and walk six hours in an eight hour workday, and sit for six hours in an eight hour workday.   He noted that Plaintiff used a cane for stability.   A second state agency medical consultant reported on June 12, 2002, that Plaintiff could lift and

carry fifty pounds occasionally and twenty-five pounds frequently, and stand, walk, and sit for six hours in an eight hour workday.  Another state agency medical consultant agreed with those conclusions on August 29, 2002.  *Id*.

On May 10, 2002, and June 19, 2002, Dr. Newkirk, a neurologist, completed a physician progress report and stated that Plaintiff was to remain off work on a permanent basis.  In August 2003, Dr. Jamasbi, a state worker's compensation physician, reported that Plaintiff could lift only five pounds and needed a cane to ambulate; he recommended vocational rehabilitation.  In August and September of 2004, Dr. Jamasbi reported that Plaintiff had a "permanent disability" for worker's compensation purposes.  *Id*.

The ALJ acknowledged that Dr. Hebert, one of the CE physicians, had reported Plaintiff as having neurological deficits with significant disc disease in his cervical and lumbar spines.  Dr. Hebert had further reported that Plaintiff could lift and carry only five to ten pounds, was unable to climb or crawl, and could stand for less than one to two hours a day and sit for only five hours a day.  *Id*.  The ALJ expressly gave the opinions of Dr. Newkirk, Dr. Jamasbi, and Dr. Hebert little weight because they were unsupported by objective clinical findings and were inconsistent with the evidence considered as a whole.  Tr. 30.  The ALJ specifically noted that, on February 11, 2002, Dr. Newkirk's own neurological examination of Plaintiff was "normal," with no motor, sensory, or reflex loss.  An April 27, 2002, examination noted muscle strength of 5/5, with intact reflexes and sensation, and only mildly decreased motor strength in the left-side extremities.  Plaintiff was

11

stated as able to lift 35 pounds occasionally and 20 pounds frequently.  He had no limitations on walking, except for use of a cane as needed, or on the use of his hands.  He could do unrestricted bending, stooping, kneeling, crouching, crawling, and squatting.  *Id*.

The ALJ noted that Plaintiff's recent physical examinations revealed no neurological deficits and no abnormality of gait.  While Plaintiff had decreased range of motion in his cervical and lumbar spines, his motor strength was normal in all extremities with no motor, sensory, or reflex loss.  *Id*.  Hospital notes from February and June of 2006 showed no motor or sensory deficits, and symmetrical reflexes.  The ALJ concluded that the lack of support for the opinions of Dr. Newkirk, Dr. Jamasbi, and Dr. Hebert entitled them to little weight.

The ALJ concluded that Plaintiff's pain and discomfort were mild to moderate at most.  Plaintiff's allegations concerning his subjective symptoms were credible to the extent that he was unable to perform medium to heavy work, but not credible to the extent that they precluded him from all work activities.  *Id*.

(6)     Plaintiff was able to perform his past relevant work as a security guard.  *Id*.

The ALJ referenced the VE's testimony that, given his functional limitations, Plaintiff could perform his past relevant work as a security guard.  Plaintiff thus had the RFC to perform his past relevant work as a security guard and was not disabled.

(7)     Plaintiff was 48 years old at the alleged date of onset, and turned 55 on September 11, 2006, such that he was an "advanced age individual" at the time of the hearing.  Tr. 31.

(8)     Plaintiff had a high school education and communicated in English.  *Id.*

(9)     Plaintiff had transferrable job skills.  *Id*.

(10)    Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform.  *Id.*

(11)    Plaintiff was not under a disability from April 13, 2000, through the date of the ALJ's decision.  Tr. 32.

The ALJ determined that Plaintiff was not disabled and denied him benefits.  Tr. 33.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

A motion for summary judgment under Federal Rules of Civil Procedure Rule 56 requires the Court to determine whether the moving party is entitled to summary judgment as a matter of law based on the evidence thus far presented.  FED. R. CIV. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001).  A genuine issue of material fact exists if a reasonable fact finder could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Id.*

Judicial review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether substantial evidence in the record supports the decision and whether the ALJ applied proper legal standards in evaluating the evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  If the Commissioner's decision satisfies both of these requirements, it must be affirmed.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A.      **"Substantial Evidence"**

The widely-accepted definition of substantial evidence is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*  It is "something more than a scintilla but less than a preponderance." *Id*.  The Commissioner has the responsibility of deciding any conflict in the evidence. *Id*.  If the findings of fact contained in the Commissioner's decision are supported by substantial evidence appearing in the record, they are conclusive, and this Court must affirm.  42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the Court overturn it. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  In applying this standard, the Court is to review the entire record, but may not re-weigh the evidence, try the issues *de novo*, or substitute  its judgment for that of the Commissioner. *See Brown*, 192 F.3d at 496.  In other words, the Court is to defer to the Commissioner's decision as much as possible without making its review meaningless.

14

### B.    Legal Standard

In order to obtain disability benefits, a claimant bears the ultimate burden of proving that he is disabled within the meaning of the Act. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423 (d)(3). A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured. *Ivy v. Sullivan*, 898 F.2d 1045, 1948 (5th Cir. 1990).

To determine whether a claimant is capable of performing any substantial gainful activity, the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1)    a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;
>
> (2)    a claimant will not be found to be disabled unless he has a "severe impairment";
>
> (3)    a claimant whose impairment meets or is equivalent to an impairment listed in the Listings will be considered disabled without the need to consider vocational factors;

(4)     a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

(5)     if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears the burden of proof on the fifth step.  *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999); *Brown*, 192 F.3d at 498.  The Commissioner can satisfy his burden either by reliance on the Medical-Vocational Guidelines of the Regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies his burden of proof as to the fifth step, then the burden shifts back to the claimant to prove he cannot perform the work suggested.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled.  *Greenspan*, 38 F.3d at 236.

### III.   ANALYSIS

Plaintiff raises the following issues in his motion for summary judgment:

(1)     The ALJ improperly determined that his degenerative disc disease did not meet the requirements of a Listed impairment.

(2)     The ALJ failed to consider properly all of the evidence in the record.

(3)     The ALJ improperly determined Plaintiff's mental RFC.

(4)     The ALJ improperly determined Plaintiff's physical RFC.

(5)     The ALJ erred in finding that Plaintiff could perform his past relevant work or other work existing in the national economy.

In his cross motion for summary judgment, Defendant contends that the ALJ's decision should be affirmed because it applied proper legal standards and is supported by substantial evidence.

A.      **Listed Impairment**

In his findings, the ALJ determined that Plaintiff's "severe" impairments included degenerative disc disease. Tr. 23. Plaintiff complains that the ALJ rejected Plaintiff's argument that this impairment did not meet Listing 1.04C pertaining to disorders of the spine.

Plaintiff states that Listing 1.04C requires the following:

Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.000B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04C. This, however, is not a complete statement of the relevant criteria. Listing 1.04, in full, provides as follows:

Disorders of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root or the spinal cord. With:

*     *     *     *     *

C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

17

"Ineffective ambulation" is further defined as:

> an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id.*, § 1.01(b)(1).

Thus, to meet this Listing, Plaintiff must prove, with acceptable medical evidence and laboratory findings, degenerative disc disease, a compromised nerve root or spinal cord, lumbar stenosis with pseudoclaudication, chronic non-radicular pain and weakness, and ineffective ambulation.

Listings criteria are "demanding and stringent," and the mere diagnosis of a condition will not suffice. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Under Sections 404.1525(d) and 416.925(d), the claimant must have a medically determinable impairment that satisfies all of the criteria in the listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a step three listing determination. *Id*. If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders v. Sullivan*, 914 F.2d 614, 620 (5th Cir. 1990).

As stated by the ALJ in the instant case, Plaintiff was diagnosed with degenerative disc disease.  However, Plaintiff establishes none of the other Listing criteria.  Although Plaintiff directs this Court to numerous instances in the medical records establishing Plaintiff's problems with, and complaints about, his back (Docket Entry No. 14, pp. 5-6), none of his medical records indicates a compromise of the nerve root or spinal cord.  Indeed, nowhere in his motion for summary judgment does Plaintiff acknowledge the requirement for "compromise of a nerve root or the spinal cord."

Plaintiff fails to meet his burden of proving that he met all of the criteria for a Listing 1.04C impairment.  Accordingly, this Court concludes that the ALJ's findings at step three are supported by substantial evidence.  No error is shown.

**B.      Failure to Consider All of the Evidence**

Plaintiff complains that the ALJ failed to consider the record evidence pertaining to his gout, alleged alcohol use, VA disability rating, and medication side effects.

Plaintiff complains that the ALJ failed to consider his VA disability rating, as the ALJ mentioned only the monthly disability income Plaintiff received. Plaintiff's argument is refuted by the ALJ's decision, wherein the ALJ discussed and weighed the VA's decision:

> The undersigned [ALJ] has considered the Veterans Administration decision and finds the disability standards are not consistent with the Social Security disability laws and regulations.  Therefore, the undersigned is not bound by such a decision and finds it is not persuasive or conclusive for determining Social Security disability.  It is given little weight.

Tr. 28.  Plaintiff does not argue or show that the ALJ applied an improper legal standard or that he otherwise erred in reaching this determination.

Nor does Plaintiff establish error regarding evidence of Plaintiff's medication side effects.  The ALJ must take into account the effects of medication on a claimant's ability to perform work tasks.  *Loza v. Apfel*, 219 F.3d 378, 396-97 (5th Cir. 2000).  However, in the instant case, Plaintiff fails to direct this Court to any evidence in the record of any actual side effects experienced by Plaintiff regarding his medications.  In his motion for summary judgment, Plaintiff has done nothing more than cite to lists of his prescribed medications. The ALJ cannot have "failed to consider Plaintiff's reported side effect[s]" if Plaintiff did not report or present evidence of any such side effects.  (Docket Entry No. 14, p. 10.)  No error is shown.

Plaintiff further asserts that the ALJ incorrectly listed "alcohol abuse" as a severe impairment.  Tr. 23.  Although a psychiatrist who examined Plaintiff in April 2002 included "alcohol dependence" within his diagnoses, no mention is made of any subjective or objective factual or medical basis for such diagnosis.  Tr. 302-304.  Even assuming, however, that the ALJ erroneously listed "alcohol abuse" as a severe impairment, the error does not require reversal and remand of the ALJ's decision.  The ALJ made no finding that alcoholism was a "contributing factor" to any disability, and Plaintiff posits no argument as to how he was harmed by this particular finding in his disability determination.

20

As recognized by the Fifth Circuit Court of Appeals, "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Where the resulting disability determination remains unchanged, even if some of the reasoning underlying that decision is erroneous, no substantial rights have been affected. *Id.* "The procedural improprieties alleged by [Plaintiff] will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Plaintiff here fails to show that the ALJ's disability determination would have been different had the ALJ not noted alcohol abuse as a severe impairment. Indeed, the alcohol abuse is mentioned only within the ALJ's review of Plaintiff's medical history. A review of his decision shows that the ALJ did not rely on the alleged abused alcohol in determining Plaintiff's credibility or disability. Because Plaintiff does not show that the ALJ's decision would have been different without the purported error, and any such error did not affect Plaintiff's substantial rights, any error was harmless and does not entitle Plaintiff to a new hearing. *Mays*, 837 F.2d at 1364.

Plaintiff also complains that the ALJ failed to consider his gout-related problems. Plaintiff refers this Court to two instances in his medical records where "gout" or "hyperuricemia" (excess uric acid in the blood) are mentioned. (Docket Entry No. 14, p. 8.) At page 508 of the transcript, a progress note references Plaintiff's hyperuricemia and his use

of allopurinol and colchicine for gout.  In the same records set, a note is made that Plaintiff

called in a telephone medication refill request, and that "Patient states he is feeling pain in

his legs.  Extermiies (sic) are swollen: both legs, feet, and ankle.  Patient is speculative about

the pain: gout, neuropathic pain, DJD . . . not able to state if this is gout pain or not[.]"  Tr.

513 (ellipsis in original).  Plaintiff asserts that the ALJ "ignored this evidence" in considering

his disability determination.  Plaintiff further asserts that, "because [his] gout waxes and

wanes in disabling symptoms," the ALJ legally erred in not making a specific finding

regarding his ability to maintain employment under *Frank v. Barnhart*, 326 F.3d 618 (5th

Cir. 2003) and *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).

No error requiring reversal and remand is shown.  The references to gout-medications

on his list of active medications and the notation of his telephone call requesting a

medication refill for pain of an unknown source do not present substantial evidence of a

medically-determinable impairment of gout.  This Court's review of the medical records

reveals that, at Plaintiff's recent VA physical examination on June 13, 2007, his physician

reported:  "gout – no current flares, well-controlled, continue daily allopurinol."  Tr. 574.

Further, Plaintiff presented no evidence at the 2007 hearing, and the records do not show, the

date that these symptoms first presented or that his alleged gout condition was an impairment

that "waxes and wanes" in severity.  *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir.

2005).  No error is shown.

### C.    "Mental RFC"

Plaintiff asserts that the ALJ incorrectly determined his "mental RFC" at step four. By "mental RFC," Plaintiff is apparently referring to the ALJ's step four consideration of Plaintiff's residual functional capacity to do physical and *mental* work activities on a sustained basis despite limitations from his impairments.   20 C.F.R. §§ 404.1520(e); 416.920(e).  An RFC is defined as "the most you can still do despite your limitations."  *Id*., § 404.1545(a)(1).   In making a determination of RFC, the ALJ must consider all of a claimant's impairments, including impairments that are not severe.  *Id*., § 404.1520(e).

In determining  the effect of Plaintiff's mental impairments pertaining to his RFC, the ALJ found that, "[Plaintiff] is able to get along with others, understand detailed instructions, concentrate on and perform detailed tasks, and respond and adapt to changes in the workplace and supervision."  Tr. 24.  The ALJ evaluated Plaintiff's mental impairments as follows:

> [Plaintiff's] mental impairments have not caused a substantial loss in his ability to respond appropriately to supervision, coworkers, and usual work situations (Social Security Ruling 85-15).  On April 20, 2002, George Maloof, M.D., examined [Plaintiff].  Dr. Maloof's mental status examination shows that [Plaintiff's] mood was dysphoric and apprehensive.  [Plaintiff] had no hallucinations or thought disturbances.  Although his recall was somewhat impaired, his recent memory was intact.  [Plaintiff's] intelligence was normal. Based on his examination of [Plaintiff], Dr. Maloof diagnosed him with a pain disorder associated with psychological factors. . . . Dr. Maloof assigned [Plaintiff] a Global Assessment Functioning ["GAF"] score of 60.

Tr. 28-29.  In evaluating Plaintiff's impairments at step two, the ALJ stated that, "A GAF of 60 indicates only moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers) (DSM IV)."  Tr. 24.  The record further shows that, on May 1, 2002, a state agency psychiatry consultant evaluated Plaintiff and found him "mentally capable of sustained simple work with limited public, coworker and supervisor interaction."  Tr. 321.

In support of his step four argument, Plaintiff refers the Court to the ALJ's step two assessment of his level of mental impairments.  However, step two assessments and limitation or level determinations are not equivalent to, or interchangeable with, RFC assessments under step four.  *See* Social Security Ruling 96-8p.  To the contrary, the ALJ specifically stated in his decision that, because of the different assessments required by steps two and four, he would be restating the step two criteria findings into work-related functions regarding his step four RFC assessment.  Tr. 24.  Accordingly, this Court declines to rely on the ALJ's statements and findings made within his step two assessment.  Consequently, Plaintiff does not show that the ALJ either applied improper legal standards in assessing his RFC to perform mental work activities, or that his RFC findings are not supported by substantial evidence.  No error is shown.

D.     "Physical RFC"

Similarly, Plaintiff argues that the ALJ incorrectly determined his "physical RFC" at step four.  By "physical RFC," Plaintiff is apparently referring to the ALJ's step four consideration of Plaintiff's residual functional capacity to do *physical* and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1520(e); 416.920(e).  As before, an RFC is defined as "the most you can still do despite your limitations."  *Id*., § 404.1545(a)(1).  In making a determination of RFC, the ALJ must consider all of a claimant's impairments, including impairments that are not severe.  *Id*., § 404.1520(e).

In the instant case, the ALJ determined at step four that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours in an eight hour workday and sit for at least six hours in an eight hour workday; that he had unlimited abilities to push or pull, with unlimited gross and fine dexterity; that he was unable to run or climb; that he could occasionally bend, stoop, crouch, and crawl, with limited twisting and balancing; and that he could not be exposed to unprotected heights, heavy machinery, or uneven surfaces.  Tr. 24.

Plaintiff complains that, in making this determination of Plaintiff's RFC, the ALJ improperly rejected the contrary opinions of three treating and consultative physicians, Dr. Newkirk, Dr. Hebert, and Dr. Jamasbi.  Under 20 C.F.R. § 404.1527(d)(2), a treating physician's opinion on the nature and severity of a patient's impairment will be given

controlling weight if it is well supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence.  In affording

the opinions of these three physicians little weight, the ALJ stated as follows:

> The opinions of Dr. Newkirk, Dr. Jamasbi, and Dr. Hebert are given little weight because they are unsupported by objective clinical findings and are inconsistent with the evidence considered as a whole.  Specifically, on February 11, 2002, Dr. Newkirk's own neurological examination was normal. [Plaintiff] had no motor, sensory, or reflex loss.  Moreover, on April 27, 2002, Dr. Han's physical examination showed that [Plaintiff's] muscle strength was 5/5.  His reflexes and sensation were intact.  [Plaintiff] had only mildly decreased motor strength in his lower extremities on the left.  Dr. Han reported that [Plaintiff] could use a cane for walking long distances or on uneven surfaces.  Dr. Han further reported that [Plaintiff] could lift 35 pounds occasionally and 20 pounds frequently.  [Plaintiff] had no limitations on his ability to walk except for the use of a cane.  [Plaintiff] had no limitation on the use of his hands.  He could do restricted bending, stooping, kneeling, crouching, crawling, and squatting.

> Likewise, [Plaintiff's] recent physical examinations do not show the presence of neurological deficits.  On October 29, 2005, Dr. Torrance's physical examination showed that although [Plaintiff] used a cane, he had no abnormality of his gait.  While [Plaintiff] had a decreased range of motion of his cervical and lumbar spine, his motor strength was normal in all extremities. Likewise, his sensory examination was normal.  Dr. Torrence specifically reported that [Plaintiff] had no evidence of motor, sensory, or reflex loss.

> Progress notes from the [VA] Hospital dated February 24, 2006, show that [Plaintiff] had no motor or sensory deficit.  Additionally, his reflexes were symmetrical.  On June 26, 2006, [Plaintiff] had no motor or sensory deficit. Moreover, his reflexes were symmetrical.  Thus, the lack of support for the opinions of Dr. Newkirk, Dr. Jam[asbi] and Dr. Hebert entitles them to little weight.

Tr. 30 (record citations omitted).

Further, Dr. Jamasbi was of the opinion that, in September 2004, Plaintiff had a "permanent disability" under state disability laws.   Tr. 377, 385, 390.  Dr. Newkirk opined that Plaintiff should remain off work on a permanent basis. Tr. 348-49.  A determination by a treating physician that an applicant is "disabled" or "unable to work" is not a medical opinion entitled to deference, but rather a legal conclusion "reserved to the Commissioner." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).  An ALJ need not justify his decision to give little weight to a physician's opinion that a patient is disabled or unable to work, because such decisions are reserved for the Commissioner.  *Id*.; *Miller v. Barnhart*, 211 F. App'x 303 (5th Cir. 2006) (unpublished).

At the 2007 hearing, Plaintiff testified that he did nothing all day except "try to cope with the pain," and sit "a little bit" then "stand up a little bit," and "lie down when the pain get[s] too extreme."  Tr. 653.  Despite those professed debilitations, Plaintiff flew from California to Houston, and took a bus from Houston to Louisiana in July 2006 for family matters. Tr. 651-52.  Plaintiff's recent physical examination through the VA in June of 2007 showed that he had full strength in all extremities ("5/5 x 4") without focal weakness.  Tr. 574.  His recent MRI of September 19, 2007, revealed cervical spondylosis[2] with mild spinal

---

[2]Cervical spondylosis is a " degenerative joint disease affecting the cervical vertebrae, intervertebral disks, and surrounding ligaments and connective tissue, sometimes with pain or paresthesia radiating down the arms as a result of pressure on the nerve roots." *Dorland' s Illustrated Medical Dictionary*, p. 1564 (28th ed. 1994).

canal stenosis, without disc herniation. Tr. 589. The medical records do not show that any corrective or remedial surgical procedures have been recommended or undertaken.

The ALJ properly weighed the competing medical opinions and appropriately discounted any legal conclusions appearing in the medical records. *See Walker v. Barnhart*, 158 F. App'x 534 (5th Cir. 2005) (unpublished). Although Plaintiff disagrees with the ALJ's resolution of the conflicting medical evidence, this Court declines to substitute its judgment or review for that of the ALJ. *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The ALJ's determination of Plaintiff's RFC to perform the physical activities of work is supported by substantial evidence, and no legal error is shown.

### E.      Past Relevant Work

Plaintiff argues that the ALJ improperly found that he could perform his past relevant work or perform other work existing in the national economy. In raising this issue, Plaintiff expressly relies on his prior arguments regarding the ALJ's failure to consider all of the evidence and his improper determinations of Plaintiff's RFC. Because the Court has rejected these other arguments, they provide Plaintiff no support in this instance.

Plaintiff further complains that the ALJ failed to determine whether Plaintiff could hold a job for a significant period of time. This argument also provides him no relief. Disability determinations turn on whether applicants can perform substantial gainful activity, which contemplates a capacity for employment on a regular and continuing basis. *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003). The Commissioner's regulations require

28

administrative adjudicators to determine RFC for work activity "on a regular and continuing basis."  20 C.F.R. § 404.1545(b).  Social Security Ruling 96-8p defines "work on a regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule."

In absence of an express finding, reviewing courts generally assume that assessments of RFC by administrative law judges include *implicit* findings of ability to work on a regular and continuing basis.  *Frank*, 326 F.3d at 619.  Only when medical or other evidence shows that symptoms caused by a severe impairment "wax and wane" is a separate, explicit finding required.  However, as noted earlier, the evidence in this case establishes no impairment of a "waxing and waning" nature, and the specific finding of an ability to work on a regular and continuing basis was not required.  *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).  No error is shown.

### F.    Defendant's Arguments

Defendant asserts in his motion for summary judgment that the ALJ's decision should be affirmed because the ALJ properly determined Plaintiff was never under a disability.  (Docket Entry No. 12.)

This Court must review the record to determine only whether the ALJ's decision is supported by more than a scintilla, but less than a preponderance, of evidence, and that proper legal standards were applied.  *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  The Court finds more than a scintilla of evidence in support of the ALJ's decision.  Therefore, the Court cannot overturn the decision of the ALJ, who is given the task of

weighing the evidence and deciding disputes.  *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).  Further, the ALJ applied proper legal standards in determining Plaintiff's disability.

For the reasons stated above, the Court finds that Defendant has satisfied his burden.  Accordingly, the ALJ's decision finding Plaintiff not disabled is supported by substantial evidence in the record.  The Court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination.  Therefore, the Court **GRANTS** Defendant's cross motion for summary judgment (Docket Entry No. 12) and **AFFIRMS** the Commissioner's decision.

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's cross motion for summary judgment (Docket Entry No. 12), **DENIES** Plaintiff's motion for summary judgment (Docket Entry No. 14), and **AFFIRMS** the Commissioner's decision.

The Clerk will provide copies to the parties.

Signed at Houston, Texas, on this the 31st day of March, 2010.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE